## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| Stephen R. Roshon, Jr., | : | |
| Plaintiffs, | : | Case No. 2:16-cv-968 |
| v. | : | Judge Sargus |
| | | Magistrate Judge Kemp |
| Eagle Research Group, Inc., | : | |
| Defendant. | : | |

## MOTION OF DEFENDANT EAGLE RESEARCH GROUP, INC. FOR JUDGMENT ON THE PLEADINGS ON PLAINTIFF'S FIRST AMENDED COMPLAINT(ECF No. 18)

Now comes Defendant Eagle Research Group, Inc., and pursuant to Fed. R. Civ. Proc. 12(c), respectfully moves this Court for an Order granting judgment in Defendant's favor and dismissing Plaintiff's First Amended Complaint (ECF No. 18). Plaintiff fails to state any colorable claim upon which relief may be granted. The reasons in support of this motion are more fully set forth in the accompanying memorandum in support.

>
> */s/ Maribeth Meluch*
> Jeffrey Stankunas      (0072438)
> jstankunas@isaacwiles.com
> Trial Attorney
> Maribeth Meluch      (0055903)
> mmeluch@isaacwiles.com
> Isaac, Wiles, Burkholder, & Teetor, LLC
> Two Miranova Place, Suite 700
> Columbus, Ohio 43215
> Phone (614) 221-2121
> Fax (614) 365-9516
> *Attorneys for Defendant*
> *Eagle Research Group, Inc.*

1

3729716

**MEMORANDUM IN SUPPORT**

**I.     Introduction**

This matter arises out of Mr. Roshon's employment with Eagle Research Group, Inc. ("Eagle Research") as an expert in the protection of highly classified government information, in particular, the operations of the U.S. Department of Energy's nuclear weapon assembly and disassembly programs. Mr. Roshon, who during his employment earned an annualized salary of over six figures, now attempts to downgrade his expertise and the highly sensitive nature of his position in an effort to claim he was entitled to additional compensation for overtime hours under the Fair Labor Standards Act ("FLSA") and Ohio Wage Act. Regardless of Mr. Roshon's attempt, the pleadings make clear that he performed non-manual labor that furthered the management and business operations of Eagle Research and the Department of Energy. Therefore, he was a highly compensated employee as defined under the FLSA and its regulations and exempt from the requirement to be paid overtime compensation. Eagle Research is entitled to judgment in its favor on all of the claims contained within Plaintiff's First Amended Complaint.

**II.    Facts**

Mr. Roshon became employed by Eagle Research in 2013 as an Information Security Specialist. (First Amended Complaint, ECF No. 18, PageID # 108, ¶ 14.) Eagle Research provides support in security assessments conducted by the federal government, namely the U.S. Department of Energy. (*Id.*, PageID #107, ¶ 8; PageID # 108, ¶¶ 15, 16.) That includes security assessments related to nuclear weapon assembly and disassembly. (Answer, ECF No. 19, PageID # 122, ¶ 16.) Mr. Roshon was responsible for traveling to DOE National Laboratories around the country to assist federal employees of the Office of Enterprise Assessments in assessing security and other classified matters. In particular, he collected data, reviewed procedures and observed

facilities. (ECF No. 18, PageID # 108, ¶ 16.) He would then finalize his conclusions on paper based on the data he gathered, interviews he conducted, and the observations he made. (*Id.*, PageID # 109, ¶ 18.) Mr. Roshon worked as part of a team of contractors and at the end of each day the team members would meet and discuss the data they collected. (*Id.*, PageID # 110, ¶ 23.) When conducting an assessment there are generally five topics to be assessed. Each topic is assigned a Team Lead who is supported by several contractors depending upon the scope of the assessment. (*Id.*, PageID # 109, ¶ 18.) By Mr. Roshon's own admissions, his "primary duty was to provide support to the federal government in conducting assessments by fact gathering using well-established techniques, procedures and specific standards set out by Eagle Research and the OSA[1]." (*Id.*, PageID # 110, ¶ 26.) These duties were performed on a customary and regular basis. (ECF No. 19, PageID ## 122-123, ¶ 16.)

Mr. Roshon resigned his employment in May 2016 in order accept a Grade GS-15 position with the U.S. Department of Energy, and he now performs the functions of a Topic Lead. (ECF No. 19, PageID # 131, ¶ 35.) At all times during his employment with Eagle Research, Mr. Roshon was paid a salary of at least $130,000.00 per year on an annualized basis including $455.00 per week. (*Id.*, PageID # 136, ¶ 52.) In addition he received a bonus for all hours he worked. In 2014, his full compensation exceeded $160,000.00. In 2015, it exceeded $180,000.00. (*Id.*)

### III. Argument

#### a. Standard of Review.

Fed.R.Civ.P. 12(c) provides that "[a]fter the pleadings are closed, but early enough not to delay trial, a party may move for judgment on the pleadings." "For purposes of a motion for

---

[1] OSA refers to the federal Office of Security Assessments. (ECF No. 18, PageID # 108, ¶ 15.)

3

3729716

judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008) (citation and internal quotation marks omitted). A motion for judgment on the pleadings under Federal Civil Rule 12(c) is subject to the same standards of review as motions to dismiss pursuant to Rule 12(b)(6). *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008).

The Sixth Circuit explained the pleading requirements that are necessary to survive a Rule 12(c) motion for judgment on the pleadings as follows:

> [T]his Court is required to "accept all well-pleaded factual allegations of the complaint as true and construe the complaint in the light most favorable to the plaintiff." *Dubay v. Wells*, 506 F.3d 422, 426 (6th Cir. 2007). Although a complaint need not contain "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Thus, a complaint survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). And, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949).

*Reilly v. Vadlamudi*, 680 F.3d 617, 623 (6th Cir. 2012). The key is that the complaint allege actual facts to substantiate the claims. Even prior to *Twombly*, this Circuit held that a court is "not to accept conclusions of law or unwarranted inferences cast in the form of factual allegations." *Gregory v. Shelby Ct.*, 220 F.3d 433, 446 (6th Cir. 2000). In this instance, Mr. Roshon failed to set forth sufficient facts to raise any plausible claim for relief under Federal or Ohio law.

> **b. Eagle Research is entitled to judgment on Plaintiff's FLSA claim because he was exempt from overtime as a highly compensated employee under 29 C.F.R. §541.601.**

4

3729716

In his First Cause of Action, Mr. Roshon claims Eagle Research failed to pay him overtime in violation of the FLSA. The FLSA requires that all employees who work over forty hours in one work week be compensated at time and a half their regular rate of pay unless they qualify for one of the variety of exemptions set forth in Section 213 of the Act. Those exemptions include what are commonly known as "white collar exemptions," which generally apply to those employees who serve in the management or administration of the employer. As set forth at 29 U.S.C. § 213(a)(1):

> **(a) MINIMUM WAGE AND MAXIMUM HOUR REQUIREMENTS.** The provisions of sections 206 (except subsection (d) in the case of paragraph (1) of this subsection) and 207 of this title shall not apply with respect to—
> **(1)**
> any employee employed in a bona fide executive, administrative, or professional capacity …

The FLSA further provides that "[a]n employee with total annual compensation of at least $100,000 is deemed exempt…if the employee customarily and regularly performs any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee…" 29 C.F.R. § 541.601(a). In order to qualify for this exemption, the employee must also meet the following requirements: (i) the total annual compensation must include payment of at least $455.00 per week on a salary basis; and (ii) the employee's primary duty is the performance of office *or* non-manual work. 29 C.F.R. § 541.601 (b)(1) and (c)(Emphasis supplied).

Mr. Roshon regularly performed non-manual work of an administrative capacity. The duties of the administrative exemption are two-fold. First, the work must be directly related to the management or general business operations of the employer or the employer's customers. Second, the primary duty must include the exercise of discretion and independent judgment with respect to matters of significance. 29 C.F.R. § 541.200(a). However, for purposes of the highly

5

compensated exemption, the employee need only perform one of these duties. *Zannikos v. Oil Inspections (U.S.A.), Inc.*, 605 Fed.App'x. 349, 359 (5th Cir. 2015); *Karna v. BP Corporation North America, Inc.*, No. H-12-010, 21 Wage & Hour Cas.2d (BNA) 1438, 2013 WL 1155485 (S.D. Texas, March 19, 2013); *Zelenika v. Commonwealth Edison Co.*, No. 09 C 2946, 2012 WL 3005375 at *10 (N.D. Illinois, July 23, 2012); *Coppage v. Bradshaw*, 665 F.Supp.2d 1361, 1369 ( N.D. GA 2009); *Amendola v. Bristol-Myers Squibb Co.*, 558 F.Supp.2d 459, 478 (S.D.N.Y. 2008.) Moreover, the exemption requires only that Mr. Roshon *customarily and regularly* perform the exempt duties. That term is defined to mean "a frequency that must be greater than occasional but which, of course, may be less than constant." 29 C.F.R. § 541.701. He is not required to perform them one hundred percent of his time.

The *Zannikos* decision, in which the Fifth Circuit concluded that a marine superintendent at an oil inspection company was exempt from overtime compensation as a highly compensated employee, is directly on point. The employer, Oil Inspections, specialized in loss-control operations in connection with oil cargo transfers. It provided monitoring services with respect to oil between trading partners to ensure that the oil was transferred in accordance with industry standards and customer specifications to avoid product, and thus financial, losses. *Id.* at 350. Mr. Zannikos was a marine superintendent whose responsibilities included observing oil transfers to verify accurate performance, monitoring the transfers, and reporting any errors or losses. *Id.* at 351. He also performed quality control functions such as inspecting the loading and discharge equipment for safety and calibration and recommending remedial measures to ship personnel or his employer. Id. In addition, he oversaw the work of other independent inspectors to assure the cargo tanks were free of contaminants and that transfers were completed with properly calibrated equipment. *Id.* Finally, he oversaw blending operations related to the oil. *Id.*  Mr. Zannikos was paid $100,000.08 for the year in question. *Id.* at 359.

Mr. Zannikos claimed that Oil Inspections had failed to pay him overtime compensation in violation of the FLSA, and that the District Court had erred in granting Oil Inspections summary judgment when it determined that he was a highly compensated employee. Specifically, Mr. Zannikos argued that he did not perform non-manual work directly related to the management or business operations of Oil Inspections or its customers. *Id.* at 360. In affirming the decision of the District Court, the Fifth District concluded that his services, which were primarily supervision, quality control and ensuring compliance with regulatory standards, are not services considered "production" but instead were non-manual work. *Id.* at 353, 360. Notably, the District Court, and as well the Fifth Circuit, concluded he did not exercise discretion and independent judgment. *Id.* at 359. But, the Fifth Circuit held that the highly compensated employee need only perform one of the administrative duties, not both. *Id.* See also *Karna* at *19 ("[N]umerous district courts have specifically held that the highly compensated employee exemption 'removes any requirement that an employer prove that an administrative employee exercised discretion in the performance of her duties.'"] It was sufficient that Mr. Zannikos performed non-manual work directly related to the management of Oil Inspections' customers for a finding that he met the exemption as a highly compensated employee. *Id.* at 354, 360.

Likewise, in *Zelenika v. Commonwealth Edison Co.,* the court determined that dispatchers who monitored and addressed problems with the electric utility's distribution system, were highly compensated employees. Their duties of overseeing service to the system and responding to customer complaints and power outages were found to constitute non-manual work related to the electric company's general business operations. *Id.* at *13. It was irrelevant that they did not exercise discretion and independent judgment, as the electric company only needed to demonstrate that either of the administrative exemption duties applied, which the Court found that it did. *Id.*

7

Mr. Roshon unquestionably meets the requirements for this exemption of highly compensated employee. He was paid on a salary basis, earned well over the exemption's threshold, and performed the requisite duties. His functions as Information Security Specialist, which consisted of collecting data, interviews, observation of facilities and completion of related paperwork, constituted non-manual work. The work was commissioned from Eagle Research for the purpose of assistance in providing security assessments conducted by the U.S. Department of Energy, through its Office of Security Assessments. (ECF No. 18, PageID # 107, ¶ 8, PageID # 108, ¶ 16, PageID # 109, ¶ 18.) Mr. Roshon's duties were intended to assist the management and operations of the U.S. Department of Energy, a customer of Eagle Research. Although his First Amended Complaint goes to great lengths to assert that he had no discretion in his position and merely followed guidelines set out by the U.S. Department of Energy for the inspections he conducted, that is irrelevant to the question of whether he qualified for this exemption. He need only meet one of the duties of this exemption, and the pleadings make clear that he more than does that. Eagle Research is entitled to judgment on this claim.

Apparent from Plaintiff's First Amended Complaint is that he believes the exemption is determined based on the amount of time he spent in his own office and that the performance of any physical work forecloses the exemption. (ECF No. 18, PageID ## 110-111, ¶¶ 28 - 34.) That is neither factually or legally correct. First, Mr. Roshon ignores that he spent substantial time in the Department of Energy personnel's offices and temporary office space during the fact gathering and report generation periods of the assessments. (ECF No. 19, PageID ## 127-128, ¶ 28.) Second, and more importantly, the law does not require the duties all be sedentary and performed in an office.

Notably, the regulation describes the exemption in the disjunctive form, not a conjunctive one.

3729716

> This section applies only to employees whose primary duty includes performing office **or** non-manual work. Thus, for example, non-management production-line workers and non-management employees in maintenance, construction and similar occupations such as carpenters, electricians, mechanics, plumbers, iron workers, craftsmen, operating engineers, longshoremen, construction workers, laborers and other employees who perform work involving repetitive operations with their hands, physical skill and energy are not exempt under this section no matter how highly paid they might be.

29 C.F.R. §541.601(d)(Emphasis supplied.)

Thus, there is no requirement that the work be performed in an office in order for it to be exempt. How much time Mr. Roshon actually spent in his office is irrelevant. The *Zannikos* case also involved work done outside of an office inasmuch as the employee was an inspector of commercial oil transfers which including monitoring ship holds and cargo containers. The Court did not find that such work outside of an office to be an impediment in determining that the employee was performing non-manual work and exempt from overtime under the highly compensated employee exemption.

Nor is the fact that the work may have a physical component sufficient without more to preclude the exemption. The oil inspectors in *Zannikos* physically moved about in performing their functions. In *Haas v. Verizon New York, Inc.*, No. 13-cv-8130, 2015 WL 5785023 (S.D. New York Sept. 30, 2015), the court granted summary judgment to Verizon on this issue. Foremost, the court recognized an important distinction in the language of the highly compensated employee exemption not found in the administrative exemption upon which it relies, and concluded that the "[highly compensated employee exemption] must impose a less burdensome standard" than the administrative exemption. *Id*. at *3-4. The language of the administrative regulation requires that an employee's "primary duty *is* the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers" whereas under the HCE exemption, the primary duty

9

only *includes* office or non-manual work. *Id.* at *3. Therefore Verizon only had to show that the employee's primary duty consisted, "at least in part, of non-manual work" and not that it "consist entirely of such work." *Id.*

The Verizon employees were inspectors that, as the employees characterized their work, traveled to customer locations to perform formulaic inspections to gather facts and confirm the technician's work was done in accordance with Verizon's quality and safety protocols based on comparison to a rigid checklist. *Id*. at *4. They were also required to wear safety apparel and equipment and were often involved in physical activities such as crawling on the ground, climbing over obstacles, and moving items to inspect certain areas. *Id*. at FN 3. The employees argued this physical nature of their job duties constituted manual work. The court disagreed finding that "the physical tasks Plaintiffs perform merely put them 'in a position to do the … the observations.'" *Id*. at *5. Not only did they not hold the type of jobs identified in the regulation, they were not employees who performed work involving repetitive operations with their hands, physical skill and energy. *Id.* "Thus, if inspecting a work site and completing a checklist is exempt work, the physical activity necessary to facilitate Plaintiffs' inspections would also be exempt." *Id.*

The court in *Haas* further held that:

Even assuming, however, that the inspections are in fact 'intertwined' with physical activity because Plaintiffs are performing physical tasks 'as they are actually doing the observation and inspection' *** such inspections, in the Court's view, nevertheless do not constitute manual work for the purposes of § 541.601(d). The only skill Plaintiffs have identified is 'the skill of engaging in physical activity to perform your job.'" *** The jobs expressly listed in § 541.601(d), however, all require more. The physical work Plaintiffs perform does not demand the skills necessary in jobs like carpentry, electrical work, plumbing or engineering. Nor are the physical tasks Plaintiffs perform similar to those performed by laborers, for whom the entirety of their work involves, repetitive physical tasks more demanding that those performed by Plaintiffs. Accordingly, while Plaintiffs may exhibit strength and dexterity when '[lying] on the ground, climb[ing] over obstacles[, … and] mov[ing] items on the site[s],' *** they do not

10

3729716

>engage in tasks involving 'physical skill' when conducting their inspections. ***
>In any event, whether some measure of physical skill is required to conduct some of the inspections or not, no reasonable juror could conclude that Plaintiffs' inspections do not '*include* [] performing office or non-manual work.'

*Id.* at *6. (Emphasis in original). In reaching this conclusion, the court relied in part on the employees' own admissions that their "primary duty *included* answering questions on a checklist and reporting back to the company, whatever else they do, it is difficult to see how their primary duty did not '*include* [] performing office or non-manual work.'" *Id*. (Emphasis in original.)

Like the plaintiffs in *Haas*, Mr. Roshon admits his primary duty was "to provide support to the federal government in conducting assessments by fact gathering using well-established techniques, procedures and specific standards set out by the Defendant and the OSA." (ECF No. 18, PageID # 110, ¶ 26.) The "core of their inspections," as they did in Verizon, involved reviewing work performed by others. Accomplishment of that primary duty included "simply complet[ing] paperwork based on the data they gather, interviews they conduct and their observations." (*Id.* PageID # 109, ¶ 18.); see also *Galdo v. PPL Electric Utilities Corporation*, No. 14-5831, 2016 WL 454416, * 5 (E.D. Penn. February 5, 2016)(concludeding that employees responsible for evaluating and controlling an electrical grid, documenting maintenance and work activities, and executing emergency procedures when needed were exempt under the administrative exemption upon which the highly compensated employee exemption is based and which is the more burdensome standard).

How much time Mr. Roshon spent sitting at a desk is not indicative of his exempt status. Nor does the physical nature of his position as an inspector of Department of Energy security render his duties manual labor. Mr. Roshon's primary duties were: (i) related to the management or general business operations of his employer's customer, the Department of Energy, (ii) was

11

non-manual labor comprising the observation and reporting on the security of DOE facilities and classified information through fact gathering, interviews, and written reports, much of which occurred in an office environment either at Eagle Research or the Department of Energy (see ECF No. 19, PageID # 127-128, 28¶), but, regardless, was not repetitive or skilled production work, and (iii) performed on a regular and customary basis. Mr. Roshon was a highly compensated employee under the FLSA and not entitled to overtime compensation.

### c. Eagle Research is entitled to judgment on Plaintiff's claim for violation of the Ohio Wage Act because he was exempt as a highly compensated employee under the FLSA.

In his Second Cause of Action, Mr. Roshon claims that Eagle Research violated the Ohio Wage Act by failing to pay him overtime compensation. Under Ohio wage laws, an employer is required to pay overtime as prescribed in Ohio Rev. Code § 4111.13:

> An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's wage rate for hours worked in excess of forty hours in one workweek, in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the "Fair Labor Standards Act of 1938," 52 Stat. 1060, 29 U.S.C.A. 207, 213, as amended…

Ohio Rev. Code § 4111.13(A). Therefore, Ohio follows the FLSA for purposes of determining when overtime is to be paid to an employee. For the same reasons that Mr. Roshon was paid appropriately under the FLSA, he was paid appropriately under Ohio's overtime provision. Eagle Research is entitled to judgment on this claim.

### d. Eagle Research is entitled to judgment on Plaintiffs' claims under Ohio Rev. Code § 4113.15.

In his Third Cause of Action, Mr. Roshon claims Eagle Research failed to pay him overtime in violation of Ohio Rev. Code § 4113.15[2]. That provision requires that an employer pay an employee on the first day of the month for all wages earned in the first half of the

---

[2] Mr. Roshon incorrectly refers to this statutory provision as "Ohio's Prompt Pay Act." That moniker actually refers to Ohio Rev.Code § 4113.61, which is not applicable here. *See e.g. Masiongale Elec.-Mechanical, Inc. v. Constr. One, Inc.*, 102 Ohio St.3d 1 (2004), ¶ 1.

3729716

preceding calendar month and on or before the fifteenth day of each month, pay such employees the wages earned by them during the last half of the preceding calendar month. Ohio Rev. Code § 4113.15. Mr. Roshon's claim under Ohio Rev. Code § 4113.15 is based upon his claim that he was not paid all wages, including overtime wages, at one and one-half times his regular rate within thirty (30) days of performing the work. (ECF No. 1, PageID # 11, ¶ 13). As Eagle Research has demonstrated that no such overtime compensation is due, this claim fails as a matter of law. Eagle Research is entitled to judgment on this claim.

      **e. Eagle Research is entitled to judgment on Plaintiff's claims under Ohio Rev. Code § 4111.08.**

In his Fourth Cause of Action, Mr. Roshon claims that Eagle Research failed to "properly maintain accurate records of all hours Plaintiff worked each workday and within each workweek." (Complaint, ECF No. 1, PageID # 11, ¶ 78.) Ohio Rev. Code. § 4111.08 provides:

> Every employer subject to sections 4111.01 to 4111.17 of the Revised Code, or to any rule adopted thereunder, shall make and keep for a period of not less than three years a record of the name, address, and occupation of each of the employer's employees, the rate of pay and the amount paid each pay period to each employee, the hours worked each day and each work week by the employee, and other information as the director of commerce prescribes by rule as necessary or appropriate for the enforcement of sections 4111.01 to 4111.17 of the Revised Code, or of the rules thereunder. Records may be opened for inspection or copying by the director at any reasonable time. Any records an employer creates on or before December 31, 2006, shall be created and maintained in accordance with this section.

The Ohio Revised Code provides for no private right of action or penalty for a violation of this section. At best, some Ohio courts have held that R.C. § 4111.08 serves as a public policy upon which a state law wrongful termination in violation of public policy claim may be based. See *White v. Sears, Roebuck & Co.*, 163 Ohio App. 3d 416, 2005-Ohio-5086, 837 N.E.2d 1275, ¶ 19. However, inasmuch as Mr. Roshon's claim here is based on the alleged failure of Eagle Research to pay him overtime compensation, and Eagle Research has demonstrated that no such

13

overtime compensation is due, this claim fails as a matter of law. Eagle Research is entitled to judgment on this claim.

### IV. Conclusion

Mr. Roshon, at all times of his employment with Eagle Research, met the criteria of the highly compensated employee exemption under the FLSA. Even after all allegations of the pleadings have been reviewed in his favor, Mr. Roshon was not entitled to overtime compensation. Eagle Research is therefore entitled to judgment in its favor on Plaintiff's Complaint.

Respectfully submitted,

*/s/ Maribeth Meluch*
Jeffrey Stankunas
jstankunas@isaacwiles.com
Trial Attorney
Maribeth Meluch      (0055903)
mmeluch@isaacwiles.com
Isaac, Wiles, Burkholder, & Teetor, LLC
Two Miranova Place, Suite 700
Columbus, Ohio 43215
Phone (614) 221-2121
Fax (614) 365-9516
*Attorneys for Defendant*
*Eagle Research Group, Inc.*

### CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of February, 2017, I electronically filed the foregoing Motion of Defendant for Judgment on the Pleadings with the Clerk of Courts using the Court's authorized CM/ECF filing system and notice of this filing will be sent to all attorneys of record by operation of the Court's electronic filing system.

*/s/ Maribeth Meluch*
Maribeth Meluch

3729716